Plaintiff brings this suit for damages resulting from personal injuries sustained while a passenger on a bus belonging to the Stevens Bus Line.
Defendant, James E. Stevens, is the operator of a public carrier motor passenger bus line between Downsville and Monroe, Louisiana, and his insurer, also a defendant, *Page 898 
was the American Fidelity Casualty Company, Inc. The other defendant in this case is T.A. Green, a resident of Arkansas, who was the owner of a truck, driven by his minor son, which collided with the rear end of the bus upon which plaintiff was a passenger, thereby causing the injuries complained of.
On October 4, 1942, plaintiff purchased a round trip ticket on the Stevens Bus Line for passage from Downsville to West Monroe, Louisiana, and return. Plaintiff did not remain on the bus until it reached its destination at West Monroe but requested the driver, one Leon Fontana, to permit him to leave the bus at "Webb's Place" in West Monroe, because of the fact that this stop would be more convenient for plaintiff's purposes, since he intended to go to the Ridge Avenue Baptist Church which was a few blocks from the location of Webb's Place. The driver stopped the bus at the appointed place, plaintiff opened the door and began to make his exit from the vehicle. Before he alighted, a truck driven by Ernest Green, the minor son of T.A. Green, traveling at a high rate of speed, struck the rear end of the bus, and as a result plaintiff was thrown to the ground and sustained serious and painful injuries.
Plaintiff has alleged several grounds of negligence against both the driver of the bus and the driver of the truck. There was judgment of the trial court rejecting plaintiff's demands as against the defendant, Stevens, and his insurer, and granting judgment in the sum of $8,333.50 against the defendant, T.A. Green, from which judgment plaintiff appeals. An order of appeal was granted the defendant, T.A. Green, but the appeal has not been perfected, and, therefore, the matter of the judgment against him is not at issue, except in so far as plaintiff's appeal seeks an increase in the amount of damages allowed.
There is no question as to the gross negligence of the driver of the truck, who was directly responsible for the accident. Only the most perfunctory defense was made on behalf of T.A. Green, the owner of the truck driven by his minor son.
The physical facts in connection with the accident are as follows:
About 10 o'clock on the morning of October 4, 1942, a bright clear day, the Stevens Bus was traveling east on Highway 80, and, at the request of plaintiff, the driver stopped the bus on the right-hand side of the paved portion of the highway well over from the center line, having ascertained, according to his testimony, that there was no traffic approaching from the east, and no traffic in view from the west for a distance of some 1,000 feet to the rear, which was the full extent of the view of the highway possible because of a curve in the highway at a distance of about 1,000 feet behind the bus. As plaintiff was alighting from the bus, the Green truck was driven into the rear of the bus with great force, plaintiff was thrown to the ground, and the bus was forced some 20 feet forward by the impact.
The grounds of negligence charged to the driver of the bus, relied upon by plaintiff as establishing acts of negligence contributing to and constituting the proximate cause of plaintiff's injuries, are specifically set forth in plaintiff's petition. The acts of negligence complained of are five in number and consist of the alleged acts of the driver of the vehicle: That he stopped on the paved portion of Highway 80 in the channel of traffic proceeding east on said highway; that he stopped suddenly and without warning to traffic approaching from the rear; that he did not drive the bus off of the paved portion of the highway onto the shoulder of the road, there being ample space for such a maneuver, so that plaintiff could be discharged in safety; that he did not, by observation in his rear view mirror, see the truck approaching from the rear at a fast rate of speed, which he should have seen; that he did not keep a proper lookout, nor did he comply with the safety rules and regulations applying to the operation of motor passenger busses.
It is observed that the last charge of negligence above noted is comprehensive in its scope and includes the specific acts about which complaint is made.
We find no difficulty in disposing of the contentions that the driver made a sudden stop without warning and without keeping a proper lookout, particularly as to observing the highway to the rear. The evidence does not support these claims, and, on the contrary, we are convinced from the testimony that the driver did give the hand signal for a stop; that he brought the bus to a gradual stop, and that at the time of bringing the vehicle to a stop there was no traffic in sight approaching the bus from the front, nor was there any traffic within view for a distance of approximately 1,000 feet to the rear. *Page 899 
While there is some testimony in the record to the effect that the crash occurred almost immediately after the bus was brought to a stop, we are convinced by the preponderance of the testimony on this point in the record that there was an appreciable lapse of time between the actual stopping of the bus and the occurrence of the collision. The plaintiff had time to open the door, exchange some remarks with a fellow passenger and bid good-bye to a soldier on the bus, and, in fact, almost complete the act of alighting from the bus when the Green truck crashed into its rear. There can be no other reasonable conclusion, according to the weight of the testimony, save that the truck traveling at a high rate of speed rounded the curve approximately 1,000 feet from the motionless bus, and, for some inexplicable reason, was driven into the rear end of the bus.
In this connection, we feel it is necessary to observe that there was more than sufficient space on the paved portion of the highway to permit of the passage of the truck, there was no approaching traffic, and, so far as we can determine, there was neither reason nor excuse for the failure of the truck driver to avoid the collision.
These conclusions dispose of all charges of negligence as against the driver of the bus, with the exception of the claim that by his act in stopping on the paved portion of the highway, he was in the channel of traffic proceeding east, and that he did not pull off on the shoulder of the road which extended for some 9 or 10 feet on the south side of the paved portion of the highway.
In brief, the principal argument made on behalf of plaintiff is to the effect that it was the duty of the driver of the bus to guide his vehicle off of the pavement onto the shoulder of the highway, bring it to a stop and discharge his passenger on the remaining space of the shoulder unoccupied by the bus. The failure so to act constitutes negligence which renders the defendant, Stevens, liable in damages.
In support of this argument, plaintiff's counsel cites two propositions, the provisions of Rule 15, Section 3 of Act 286 of 1938, and, the well-recognized principle that requires carriers of passengers to exercise the highest degree of care in transporting passengers with safety and imposing upon such carriers the responsibility of using the utmost skill and diligence in protecting passengers against the possibility of injury.
Rule 15 of Section 3 of Act 286 of 1938 reads as follows: "No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon a highway unless a clear and unobstructed width of not less than fifteen (15) feet upon the main traveled portion of said highway opposite such standing vehicle shall be left free [for] passage of other vehicles thereon."
Though we are unable to find that the language of the statute interpreting the words "park or leave standing any vehicle" has been considered by the courts of our State, we do find a number of cases from other jurisdictions which involve the exact language used in the Louisiana statute. Reference to 31 Words and Phrases, Per. Ed., p. 94, under Park (verb), convinces us that the uniform interpretation of the word "park", under statutes similar to the Louisiana Act here under consideration, does not comprehend nor include a mere temporary or momentary stoppage, but rather connotes a stoppage with the intent of permitting the vehicle to remain standing for an appreciable length of time. Neither does the word "park" in common usage embrace the temporary cessation of motion for the accomplishment of a particular lawful purpose, such as the discharging or receiving of passengers.
The case of Leary v. Norfolk Southern Bus Corporation,220 N.C. 745, 18 S.E.2d 426, involves a set of facts strikingly similar to those of the case before us.
It appears that Rule 15 of the Louisiana Act, as above noted, is word for word identical with Section 2621 (308) of the North Carolina Code, 1939.
The allegations of negligence made by the plaintiff in the Leary case are five in number and are exactly the same character of acts upon which this plaintiff predicates his charges of negligence against the driver of the Stevens bus.
There is a slight difference of facts in the Leary case in that the car following the bus attempted to pass to the left of the bus, and, because of the approach of a car from the opposite direction, cut back *Page 900 
into the right and collided with the rear end of the bus.
The Supreme Court of North Carolina, citing a wealth of authorities, and after discussing the unreasonableness of the strict interpretation of the word "park" as meaning a mere temporary stopping, reversed a judgment of the lower court in favor of plaintiff and granted a new trial.
We believe that the question of negligence must be considered in the light of facts surrounding each individual case. Acts which would constitute negligence on the part of the driver of a motor vehicle caught in a stream of traffic flowing in both directions of a main highway are not necessarily acts of negligence if performed on a clear stretch of road.
We believe that a reasonable interpretation of the language of the Act leads to the conclusion that the action of the driver of the Stevens bus was not negligent under the circumstances and conditions existing at the time.
With reference to the high degree of care required of operators of common carriers of passengers by motor bus, while we concede the importance of enforcing the well-established rule, we cannot subscribe to the conclusion urged on behalf of the plaintiff that the bus driver in the instant case was careless and negligent in the exercise of his duty in preserving the safety of his passengers. We are convinced by the preponderance of the testimony that the driver gave the proper signals, made the proper observations, brought his vehicle to a gradual stop, and fulfilled every reasonable duty with regard to the safe discharge of his passenger. Even had the truck been in view at the time the bus was brought to a stop, we do not consider that it was the duty of the bus driver to pull off the paved portion of the highway in order to effect a momentary stop. On a crowded street or highway filled with traffic moving in opposite directions, our conclusion might be otherwise. There is no denying the fact that the bus was brought to a stop far over at the right of the pavement, leaving a clearance of more than half of the paved portion of the highway and the width of the shoulder adjacent thereto, a total of something more than 21 feet of clear space available for the use of passing cars. As a matter of fact, there was a passage space well more than the width of two cars to the north of the stopped bus. No reasonable person could contemplate the likelihood of a truck approaching from the rear on an open highway with ample passage space, with the driver's view unobstructed, crashing into the rear of his vehicle. Certainly, it is not the purpose nor intent of law to impose onerous burdens and duties upon the drivers of vehicles which would lead to absurd and unreasonable requirements.
The point has been raised that even if the driver of the bus was guilty of negligence, such negligence was not the proximate cause of the accident. Since we find no negligence on the part of the driver, it is not necessary to consider this point.
On the question of the quantum of damages, the facts show that plaintiff remained in the hospital for about nine days, was confined to bed for some three weeks, and to his home for a period of several weeks. Plaintiff suffered several contusions and lacerations to the face and head, a number of broken ribs, a punctured lung, and a permanent injury to one eye, causing diploplia, or double vision. Hospital and medical bills amounted to $333.50. After thorough consideration of the matter, the learned Judge of the district court awarded damages in the sum of $8,333.50, and after careful analysis of the record, we do not find that this amount is inadequate.
For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.